## Meehan's Appeal.

*Public officers—Deputy prothonotary—Prothonotary's clerks—Compensation—Discretion of salary board—Act of July 11, 1923.*

1. In reducing the salaries of the deputy prothonotary and the clerks of the prothonotary, the salary board abuses its discretion under section 7 of the Act of July 11, 1923, P. L. 1054, if it does not consider the services rendered and the increase in the volume of business of the office, but bases its decision solely on a comparison with salaries paid deputies and clerks of prothonotaries in other counties.

2. The salary of each office should be based upon the services and duties required to be performed.

Appeal from salary board. C. P. Northumberland Co., Feb. T., 1926, No. 431.

*G. B. Reimensnyder* and *J. F. Schaffer*, for appellant.

*J. A. Welsh*, County Solicitor, and *F. A. Witmer*, Controller's Solicitor, for appellee.

STROUSE, P. J., and LLOYD, J., April 4, 1927.—From the decision of the salary board fixing their salaries, Edward J. Meehan, Deputy Prothonotary, Edward J. Brennan and Miss Florence Reimensnyder, clerks, have filed separate appeals, which will be disposed of in this opinion.

In the month of January, 1926, the Commissioners and Controller of Northumberland County met with Miss Mary V. Reimensnyder, Prothonotary, in conformity with the 7th section of the Act of July 11, 1923, P. L. 1054, for the purpose of fixing the number of clerks and the salaries of persons appointed to positions in the prothonotary's office.

The minutes of the salary board, thus constituted, are as follows:

*"Prothonotary's Office.*

"Prothonotary Miss Mary Reimensnyder appeared before the Salary Board for the transaction of business relative to the Prothonotary's Office, but no action was taken owing to the unavoidable absence of J. A. Welsh, Solicitor for the County Commissioners.

"On motion of Kline, seconded by O'Gara, the Salary Board adjourned to meet Friday, January 8, 1926."

*"Prothonotary's Office.*

"Friday, January 8, 1926.

"Prothonotary Miss Mary Reimensnyder appeared before the Salary Board and announced the appointment of one deputy, Edward Meehan, and two clerks, Edward Brennan and Miss Florence Reimensnyder.

"Mr. Kline offered the motion, seconded by Mr. O'Gara, that the number of employees for the Prothonotary's Office shall be one deputy and two clerks. The vote on the motion resulted as follows: For the motion, Kline, O'Gara, Kramer, Reimensnyder; total, 4. Against the motion, none. Motion carried.

"Mr. Kline offered the motion, seconded by Mr. O'Gara, that the salarie of the employees of the Prothonotary's Office be fixed as follows: Deputy $2700 per year; one clerk, $2100 per year; one clerk, $2100 per year.

"The vote on the motion resulted as follows: For the motion, Kline, O'Gara Kramer; total, 3. Against the motion, Reimensnyder; total, 1. Motio carried."

Upon the hearing, testimony was taken which showed that, prior to th Salary Act's going into effect in this county, the deputy prothonotary wa paid $3000 per annum and the two clerks $2400 each per annum. The dec sion of the salary board reduced the salaries of the deputy prothonotary t $2700 per annum and of the clerks to $2100 each per annum.

It is the contention of the appellants that the action of the salary boar in reducing the salaries was against the protests of the prothonotary an was an arbitrary action on the part of the board, taken without regard the responsibility, the duties and the services rendered by these appointees caring for the business of the prothonotary and the clerk of the courts; th there was no preliminary inquiry into the volume of business of the office, th hours of duty, nor the extent of the service of each of these appointees.

Upon the argument, it was the contention of the salary board that th compensation as fixed is fair and adequate for the service rendered by th appellants; that such salaries compare favorably with the salaries paid other counties of the same class for similar services, and that should th court sustain these appeals, it would in effect substitute its judgment for th of the board.

The testimony discloses in considerable detail the services rendered by ea of the appellants, the increase in the volume of business during the past yea the salaries heretofore paid for such services, but is absolutely silent as what prompted the action, unless it could be inferred that the action w based upon the salaries paid deputies and clerks in the other offices of t county, or the salaries paid deputies and clerks in other counties in the Sta of the same class.

If either of the latter suggestions brought about the reduction, then the was an abuse of discretion. The salaries of those similarly employed in oth counties of the same class cannot be controlling, for it is common knowled that there is a vast difference in the volume of business and, therefore, t service to be rendered in counties of the same class. Such consideration a leaves out of the question the fact that wages which are fair in one local may be entirely inadequate in another. Then, again, the salaries paid to deputies and clerks in the other offices in the county cannot be taken as criterion by which the salary is to be measured for the deputy and clerks the office of the prothonotary and clerk of the courts. As the evidence sho and the court well knows, there is little routine work in caring for the bu ness of the prothonotary and clerk of the courts. Instruments and papers filed and excerpts taken therefrom by clerks are written into the dockets make a completed record. The care of properly filing such documents to proper place and the duty to see that these papers are not lost or surrep tiously removed, in view of the fact that attorneys and others are entitled see and examine such instruments, involve a great deal of work and respon bility not to be found in any other office in the county. The responsibility the office requires that the prothonotary appoint persons trained in the w who are willing to devote more than the prescribed number of hours per for the care of the business of each day. The lawyers, the prothonotary the courts have knowledge that a great many of the instruments filed m

be entered and indexed upon the day received, and in a county with a business as extensive as that of Northumberland County, the business frequently requires that the employees complete their work after the usual hours.

These facts, when considered in connection with the uncontradicted testimony that within the past year the business of this office has increased 20 per cent., are facts which should have been considered by the salary board in fixing the salaries of these appellants. These are the facts which the legislature contemplated should be considered in determining salaries. The minutes of the board as well as the evidence contain no reference to the consideration of these matters by the salary board. The inference is irresistible that the endeavor was to make the salaries of the deputies and clerks in the prothonotary's office correspond with those in the other offices of the county, or, regardless of the volume of business, to make the salaries compare with those of other counties of the same class. Neither of these considerations should have been made the basis of the action of the board. By this we do not wish to be understood as saying that there is not the same degree of capability and efficiency in the employees in the other county offices, for that is not the fact; but we do stress the fact that the character and nature of the services required of the employees of the prothonotary's office are different and involve different responsibilities, and that the salaries of each office should be based upon the services and duties required in the office under consideration.

If it were not for the fact that these appeals involve the question of the reduction of salaries heretofore existing, we might reach a different conclusion, but, in the absence of a valid reason for the reduction of salaries, and in view of the evident basis upon which the salary board reached its conclusion, we are of the opinion that the reduction is unfair to the appellants and that each of the three appeals must be sustained.

And now, to wit, April 4, 1927, the appeal of Edward J. Meehan is sustained and his salary is fixed at $3000 per annum from Jan. 1, 1926.

From C. M. Clement, Sunbury, Pa.

NOTE.—Prior decisions relating to power and duty of salary boards.

In Markle's Appeal, 39 York Leg. Record, 161, it was held that, on appeal from the decision of a salary board under section 7 of the Act of July 11, 1923, P. L. 1054, the judgment of the court would not be substituted for the judgment of the board, and the action of the latter would not be reversed where there was no evidence of abuse of discretion or of some manifest error productive of injustice or interference with the proper dispatch of the public business, the court saying, by Niles, J.:

"There is nothing in the evidence produced from which it could be found that the actions of the salary board, made the subject of these four appeals, were not the honest exercise of the discretion of the members of the board, or that they were influenced by any improper motives or considerations, or that they did not give due consideration to the matters involved.

"In the absence of failure to give due consideration, or of abuse of discretion, or of some manifest error productive of injustice or interference with the proper dispatch of the public business, we do not feel that the court should interfere with the action of the salary board.

"We do not think that the law should be construed so that, upon appeal by some interested person, the deliberate action of the salary board should be reversed and the judgment of the court substituted for the judgment of the body in which the law primarily vests the administrative discretion.

"Nothing has been offered to overcome the presumption that the members of the salary board performed the ministerial duty required by the act of assembly in such manner as they deemed best for the public service. This being so, we do not deem it to be our duty to attempt to change their conclusions."

### Meehan's Appeal.

In Grenell's Appeal, 4 D. & C. 616, it was held that under the Act of June 29, 1923, P. L. 944, relating to salaries, etc., of certain officers and their deputies and clerks in counties of the sixth class, and providing that the deputies and clerks should be paid by "fixed and specific salaries," the salary boards had no power to fix a lump sum to be paid for deputies and clerks under the direction of the prothonotary, but it was their duty to fix the salary to be paid to each designated person.

In Fry v. Martin et al., C. P. Cumberland Co., May T., 1925, No. 78, and Bennett v. Clark et al., C. P. Indiana Co., March T., 1925, No. 221, it was held to be the duty of the salary board, under the Act of June 29, 1923, P. L. 944, to fix the salaries of subordinates in the office of the county treasurer. In the former case it was said by Biddle, P. J.: "It is true the act in question does not, in express terms, mention the county treasurer as one of the officers for whose deputies or clerks the salary board was to fix and determine the salaries, but we think that, from an examination of the act as a whole, it was intended that the salaries of all clerks or deputies for the officers named in the act were to be fixed by the salary board. That board was not to fix or determine the salary of the county treasurer, but the act itself did fix and determine the manner in which the compensation of that officer was to be determined. It is true that this was done primarily by referring to existing legislation; but the effect of that is the same as if the terms of that existing legislation had been re-enacted in the act in question; and the Act of 1923 does fix the maximum compensation to be received by the treasurer, and to this extent it determines his compensation in a manner that had not heretofore been done. The word that is used in the act in regard to this is 'compensation' and not 'salary,' and the two words are not synonymous; but the word 'compensation' is of a broader meaning than the word 'salary' and is quite sufficient to include therein salary as well as payment of a different kind. We can see no reason in principle why a different rule should apply to a county treasurer than that applied to the other officers who are named in the act; and we think, from an examination of the whole act, including its title, that the purpose of the legislature was to have the act apply to the subordinates of the county treasurer as well as to the subordinates of the other officers named."

In Bennett v. Clark, supra, it was said in a short opinion by Langham, P. J.: "It appearing to the court that section 1 of this act fixes the salary of the treasurer by limiting the annual salary thereof to the sum of four thousand dollars ($4000), hence, the office of treasurer is included in the provisions of sections 4 and 5 of said act, providing for the payment of salaries of clerks, &c., by the county, and directing the salary board to fix such salaries."

In Light v. County Commissioners, C. P. Lebanon Co., March T., 1924, No. 305, it was held that the power of the salary board did not include the right to fix the salary of the county treasurer himself, but that his salary was to be fixed under the provisions of existing law, and the only change made by the act is the limitation in section 1 of the amount of his compensation. In the course of the opinion by Henry, P. J., it was said:

"The Act of 1834 provides that 'each county treasurer shall receive in full compensation for his services on behalf of the county a certain amount per cent. of all moneys received and paid by him, which rate shall be settled from time to time by the county commissioners, with the approbation of the county auditors.' The Act of 1923, in the 1st section, provides that 'In counties of the sixth class the compensation of the county treasurer shall be fixed under the provisions of existing law, but the treasurer shall not, in any case, receive more than four thousand dollars in any one year,' and then goes on to fix the 'annual salary' of the clerks of the Courts of Quarter Sessions, Oyer and Terminer, Orphans' Court and the prothonotary, recorder of deeds and register of wills. Section 4 of this later act provides that 'all the officers whose salaries are fixed by this act, and their several deputies and clerks authorized by the salary board, shall be paid for their services by fixed and specific salaries, which shall be a charge upon the treasury of the county.' Section 5 again refers to the 'salaries' of the clerks and deputies. Section 6 provides that the salaries fixed by the act shall be in lieu of all other fees, etc.

"The plaintiff contends that this Act of 1923 provides for the fixing of the salary of the county treasurer within the meaning of the provisions of the act relating to clerks and deputies. It is very evident that the legislature had some distinction in mind in referring to the pay of the county treasurer as 'compensation' and to the pay of all other officers as 'salaries.' The word salary, as we usually understand it, suggests a periodical wage or hire, while the word compensation is

suggestive of remuneration or something as an equivalent for some other thing or act and may well include a salary. The words, however, are not synonymous and not of the same meaning. The provision that the compensation of the county treasurer shall be fixed under the provisions of existing law is simply declaratory, and, so far as goes to the effect of this act, might well be omitted from it. The only change here suggested with reference to the county treasurer is a limitation in the amount of compensation he shall receive. The conclusion of the court then is that the Act of 1923 did not assume to fix the salary of the county treasurer and that he is not within the terms of those provisions of this act referring to 'salaries.' "